UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CORY PEER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:16-cv-01578 |
| ) | CHIEF JUDGE CRENSHAW |
| GRAYCO MANAGEMENT LLC ) | |
| and PHIL GRAY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, is Cory Peer's Motion to Conditionally Certify Collective Action, to Order Disclosure of Putative Members' Names and Contact Information, and to Facilitate Court Supervised Notice (Doc. No. 27), to which Grayco Management LLC ("Grayco") and Phil Gray have responded in opposition (Doc. No. 33) and Plaintiff has replied (Doc. No. 38). For the reasons stated below, Plaintiff's Motion will be denied.

### I. Factual Background

According to the unverified Complaint and Plaintiff's Declaration submitted in support of his Motion, the relevant factual allegations are as follows:

Defendants own and operate approximately 20 McDonald's restaurants in Nashville, Tennessee. (Doc. No. 1, Compl. ¶ 7). Plaintiff worked at the McDonald's on Ruby Circle from November 2014 until March 2016. (Doc. No. 27-1, Peer Decl. ¶ 2).

Plaintiff was the third shift manager at the Ruby Circle McDonald's, earning $10 per hour. (Id. ¶ 5). As a shift manager, his responsibilities included taking food and drink orders, cooking,

1

cleaning, and "maintaining labor and sales." (Compl. ¶ 18).

Plaintiff claims that he regularly worked more than 40 hours per workweek and that his managers knew or should have known that he did so. (Peer Decl. ¶¶ 6, 9). He also claims that Defendants maintained a uniform timekeeping policy that automatically deducted 30 minutes from each shift he worked for an unpaid meal break, whether he actually took a break or not. Again, he claims that his managers knew or should have known that he was not taking meal breaks and not getting paid for that time. (Id. ¶¶ 7, 9).

Plaintiff also alleges that, for some workweeks, Defendants altered his time records to reflect less time than he actually worked, thereby depriving him of receiving his overtime rate of 1 1/2 times his regular rate of pay of $10 per hour. Once again, he asserts that his managers knew or should have known this. (Id. ¶¶ 8, 9).

Plaintiff contends that he was not alone in failing to receive all the wages he was due. He claims to be "personally aware of other former hourly employees" who were subjected to the same policy as he was, and "who worked more than 40 hours in a workweek but were not paid overtime pay for all hours they worked over 40 hours." (Id. ¶¶ 10, 11).

In response to the Complaint and Declaration, Defendants have filed the Declaration of Phil Gray, Grayco's Chief Operating Officer. In that Declaration, Mr. Gray states that Defendants actually own 24 McDonald's restaurants in Nashville, and that Plaintiff worked at two of them, first as a crew member at the Broadway McDonald's, and then at the Ruby Circle location. (Doc. No. 33-1, Gray Decl. ¶¶ 1,3). Mr. Gray also asserts that, shortly after Grayco purchased the Nashville McDonald's franchises in October 2013, it installed a SmartClock biometric timekeeping system at each location to ensure that hours were actually and accurately recorded. The SmartClocks allow employees to clock in and out for work using their fingerprints. Employees are required to clock in at the beginning

2

and end of every shift, and also at the beginning and end of each unpaid meal break. Mr. Grayco insists that Grayco does not have an automatic-deduction policy or practice. To the contrary, employees are instructed to clock in and out at the start and end of their shifts; to clock in and out for their thirty-minute meal breaks; to not clock in until fully ready to work; and to not clock out before being fully relieved of work. Moreover, Grayco has written policies that specifically prohibit employees from working off-the–clock, require that employees be paid for all hours worked, and require that employees be paid time and one-half for all hours worked in excess of 40 hours per week. Furthermore, employees are asked to review their time records each week, to insure any necessary corrections are made, and payroll mistakes are promptly corrected.

Defendants have also filed declarations of four general managers (at least one of whom was formerly an hourly worker for Grayco) from different Nashville McDonald's restaurants operated by Grayco. Those declarations generally track each other and indicate that time records are reviewed regularly; employees are given an opportunity to review their time clock entries; time is not deducted from the time records (unless the employee indicates there is a mistake); 30 minutes are not deducted for a meal break when an employee fails to take such a break; and employees are paid for all hours worked. (Doc. Nos. 33-5, 33-6, 33-7, 33-8).

Finally, with his reply, Plaintiff filed a supplemental declaration. In that declaration he states:

> 4. During my employment, I was informed by Mike Wadram, my supervisor, that it was company policy to automatically deduct 30 minutes from each shift worked by an hourly employeee whether they took their allowed 30-minute meal break or not. I later discussed the matter with Claudia Lara, the restaurant General Manager, and she acknowledged the policy and agreed with Mike that 30 minutes would be deducted from the time for any hourly employee whether they took their allowed 30-minute break or not.
>
> 5. On numerous occasions while employed by McDonald's, I did not take a break during my shift but 30 minutes was still deducted from my time, resulting in 30 minutes of work being performed while I was off the clock.

3

6. On numerous occasions, the General Manager deducted time from the amount that I had worked during a pay period without my permission or knowledge resulting in multiple hours of work being performed by me without compensation. At least once she promised to add time back to my time for the next pay period but the time was never added back. From my conversations with my co-corkers and from my firsthand observations of them during work hours, I have personal knowledge that time was also deducted from their recorded time on occasion, which also resulted in them performing work without compensation.

7. I am personally aware of other co-workers and hourly employees who were subjected to the policy of automatically deducting 30 minutes, including Skylar Parks, John Parker, Laura Amelia Davenport, and Ralph (last name unknown). These other hourly employees were employed at the Ruby Circle McDonalds. There were numerous occasions where these named employees did not take breaks during their shifts but 30 minutes was still deducted from their time, resulting in 30 minutes of work being performed while they were off the clock. My knowledge of the application of this policy to other employees comes from my firsthand observations of my co-workers during work hours, along with interactions and conversations with them concerning the automatic 30-minute deduction, and upon my knowledge of their work hours and breaks based upon his [sic] position as a member of management (Shift Manager).

(Doc. No. 38-1, Peer Sec. Decl. ¶¶ 4-7).

In the Supplemental Declaration, Plaintiff goes on to assert that the "off-the-clock" work was at the direction of his supervisor and general manager, and it was performed in plain sight. (Id. ¶ 8). He also claims that neither he nor his co-workers were "instructed or trained on how to reclaim the deducted 30 minutes or any other deductions for time." (Id. ¶ 9).

## II. Legal Discussion

The FLSA generally requires that employers pay employees specified hourly rates for up to 40 hours per week, and pay overtime compensation at one and one-half times the regular rate for hours worked in excess of 40 hours in a week. 29 U.S.C. § 207. To enforce this provision, an aggrieved employee may bring a collective action on his own behalf, and on behalf of all those who are "similarly situated" and who "opt-in" by giving consent in writing to become a party. 29 U.S.C. § 216(b).

Lead plaintiffs bear the burden of showing that opt-in plaintiffs are substantially similar. Frye v. Baptist Memorial Hospital, Inc., 495 Fed. App'x 669, 672 (6th Cir. 2012). The standards used for determining whether employees are similarly situated – and hence conditional certification is appropriate – depend upon the stage of the case.

Early on, and usually prior to discovery, the standard is "fairly lenient," and requires Plaintiff to make "'a modest factual showing'" that "'typically results in conditional certification of a representative class.'" Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 547 (6th Cir. 2006) (quoting, Pritchard v. Dent Wizard Int'l Corp., 210 F.R.D. 591, 594 (S.D. Ohio 2002); Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp.2d 493, 497 (D.N.J.2000)). "At this point, the court 'does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.'" Roberts v. Corr. Corp. of Am., 2015 WL 3905088, at *10 (M.D. Tenn. June 25, 2015) (quoting Brasfield v. Source Broadband Servs., LLC, 257 F.R.D. 641, 642 (W.D. Tenn. 2009)). "At the second stage, following discovery, trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated" because "'the court has much more information on which to base its decision and, as a result, [it] employs a stricter standard.'" Id. (quoting Morisky, 111 F. Supp. 2d at 497).

When Defendants filed their response, they did not have the benefit of Plaintiff's Supplemental Declaration. While that Declaration shores up some of the allegations in Plaintiff's initial Declaration and is a bit more specific, it is not enough for this Court to conclude that conditional certification is appropriate given the scope of the class Plaintiff seeks to represent.

In his proposed Notice, Plaintiff describes the lawsuit as follows:

> On July 1, 2016, this lawsuit was filed in the United States District Court for the Middle District of Tennessee against Grayco Management, LLC and Phil Gray, on behalf of Cory Peer, and other present and former employees of Defendants who

5

have worked as hourly workers in the McDonald's restaurants owned by Grayco Management, LLC and Phil Gray within the last three years. This lawsuit alleges that the Defendants violated the Fair Labor Standards Act for failure to pay overtime wages for all overtime worked at a rate of 1 1/2-times the regular rate of pay for all hours worked over forty (40) in some workweeks.

(Doc. No. 27-2 at 1). The proposed Notice also describes the composition of the class to be as follows:

All current or former employees who worked as hourly workers in the McDonald's restaurants owned by Grayco Management, LLC and Phil Gray at any time within the last three (3) years and who worked off the clock, had their time records altered to show less time worked than actually worked, and who did not receive overtime wages for all overtime worked at a rate of 1 1/2-times the regular rate of pay for all hours worked over forty (40) during some workweeks during the past three years.

(Id. at 2).

To be sure, the standard for conditional certification early in a lawsuit is lax and requires plaintiffs to "simply 'submit evidence establishing at least a colorable basis for their claim that a class of similarly situated plaintiffs exist,'" Shabazz v. Asurion Ins. Serv., 2008 WL 1730318, at *3 (M.D. Tenn. Apr. 10, 2008) (quoting, Olivo v. GMAC Mortgage Corp., 374 F. Supp.2d 545, 548 (E.D. Mich. 2004)). Even so, "[a] minimal burden should not be confused with a nonexistent burden." Goodrich v. Covelli Family Ltd. P'ship, 2012 WL 1081473, at *3 (M.D. Fla. Mar. 30, 2012); see Cason v. Vibra Healthcare, 2011 WL 1659381, at *3 (E.D. Mich. May 3, 2011) ("Although the standard for granting conditional certification is lenient, it is not non-existent.").

Plaintiff seeks certification based solely on his own declarations and it is an open question whether the allegations of a single plaintiff are sufficient to meet the minimal burden for conditional certification. See Cason, 2011 WL 1659381, at *3 (observing that "the court has not found a single case in which conditional certification was granted based upon the allegations of a single employee");

6

Sanchez v. JMP Ventures, L.L.C., 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014) (refusing conditional certification based on the declaration of a single plaintiff); Guess v. U.S. Bancorp, 2008 WL 544475 (N.D. Cal. Feb.26, 2008) (denying conditional certification without prejudice where evidence consisted of the plaintiff's own allegations); but see Smith v. Waverly Health Care & Rehab. Ctr., Inc., 2013 WL 817266, at *2 (M.D. Tenn. Mar. 5, 2013) (finding plaintiff's sole declaration pertaining to a single facility provided "a bare minimum of evidence to establish some factual basis from which [it] can determine if similarly situated potential plaintiffs exist."). That is particularly true where, as here, Defendants have provided declarations to counter Plaintiff's assertions. See Langlands v. JK & T Wings, Inc., 2016 WL 4073548, at *4 (E.D. Mich. Aug. 1, 2016) (citing Cason for the proposition that "Courts have declined to conditionally certify a class when defendants provide declarations that contradict plaintiffs' assertion").

Regardless, Plaintiff's declarations are based solely upon his alleged experiences at the Ruby Circle McDonald's, what he allegedly observed there, and what he allegedly was told by managers and co-workers at that restaurant. Nevertheless, he seeks conditional certification of all hourly employees at all 24 Grayco McDonald's in Nashville without any hint that those locations, too, engaged in the same sort of FLSA violations.[1] The Court finds this insufficient, as a matter of law, to warrant conditional certification of the class that he seeks to represent. See Simpson v. Caresouth Hha Holdings, LLC, No. 3:16-CV-79, 2016 WL 3349637, at *4 (M.D. Tenn. June 16, 2016) (refusing to conditionally certify companywide class where plaintiffs worked only in Tennessee and declarations were not filed by employees from other locations); Ware v. T-Mobile USA, 828 F. Supp. 2d 948, 954 (M.D. Tenn. 2011) (denying conditional certification of nationwide class where

---

[1] Plaintiff persisted in this position even after Defendants pointed out in their response that his allegations were based solely upon his experience at the Ruby Circle McDonald's.

7

declarations were limited to employees of Nashville and Colorado Springs call centers); Roberts v. Corr. Corp. of Am., 2015 WL 3905088, at *14 (M.D. Tenn. June 25, 2015) (denying conditional certification of companywide class when all but one declaration was from an employee working in Tennessee); Rueda v. Tecon Servs., Inc., 2011 WL 2566072, at *4 (S.D. Tex. June 28, 2011) (collecting cases for the proposition that "FLSA violations at one of a company's multiple locations generally are not, without more, sufficient to support company-wide notice"); Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358, 363 (M.D. Ala. 1999) (observing that "[w]hile Plaintiffs have presented evidence that FLSA violations may exist with regard to certain hourly wage employees at Defendant's Dothan restaurant, there is a total dearth of factual support for Plaintiffs' allegations of widespread wrongdoing at Defendant's other restaurants").

### III. CONCLUSION

Plaintiff's Motion to Conditionally Certify Collective Action, to Order Disclosure of Putative Members' Names and Contact Information, and to Facilitate Court Supervised Notice (Doc. No. 27) is **DENIED**.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE